IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| **JYAN HARRIS** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **CITY OF KANSAS CITY,** ) <br> **KANSAS FIRE DEPARTMENT** ) <br> Serve At: ) <br> Kansas City Kansas Fire Department ) <br> 701 N. 7th Street, Suite 979 ) <br> Kansas City, Kansas 66101 ) <br> ) <br> And ) <br> ) <br> **UNIFIED GOVERNMENT OF** ) <br> **WYANDOTTE COUNTY/** ) <br> **CITY OF KANSAS CITY, KANSAS** ) <br> Serve At: ) <br> Unified Government Clerk's Office ) <br> 701 N 7th St Ste 323 ) <br> Kansas City, Kansas 66101 ) <br> ) <br> And ) <br> ) <br> **IAFF Local 64** ) <br> Serve At: ) <br> 7540 Leavenworth Rd. ) <br> Kansas City, KS 66109 ) <br> ) <br> Defendants. ) | Case No. <br><br><br><br><br><br> REQUEST FOR JURY TRIAL |

## **COMPLAINT**

COMES NOW, Plaintiff Jyan Harris (hereinafter, "Plaintiff") by and through his undersigned counsel and for his Complaint against Defendant City of Kansas City, Kansas Fire Department (hereinafter, "KCKFD"), Defendant Unified Government of Wyandotte County/Kansas City, Kansas (hereinafter, "Unified Government") and Defendant IAFF Local 64 (hereinafter, "Local 64") (collectively, hereinafter, "Defendants") alleges and states as follows:

1

## Parties and Jurisdiction

1. Plaintiff is a citizen of the United States, residing in Kansas City, Wyandotte County, Kansas and, at all times pertinent to this Complaint for Damages, was an "employee" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*. ("Title VII").

2. Defendant City of Kansas City, Kansas, Fire Department ("KCK Fire Dept.") is political subdivision organized under the laws of the State of Kansas. At all times pertinent to this Complaint for Damages, Defendant KCK Fire Dept. was an "person" within the meaning of the ADA and Title VII.

3. Defendant Unified Government is a political subdivision organized under the laws of the State of Kansas. At all times pertinent to this Complaint for Damages, Defendant KCK Fire Dept. was an "person" within the meaning of the ADA and Title VII.

4. Defendant IAFF Local 64 is a labor organization organized under the laws of the State of Kansas. At all times pertinent to the Complaint for Damages, Defendant IAFF Local 64 was a "labor organization" within the meaning of the ADA and Title VII.

5. This is an employment discrimination and retaliation lawsuit based upon and arising under the ADA and Title VII.

6. All of the unlawful acts and practices set forth below were committed within the city of Kansas City, Wyandotte County, Kansas. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

## Administrative Procedure and Procedural Posture

7. On or about July 19, 2017, Plaintiff timely filed a Charge of Discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of Plaintiff's disability and/or Defendants' perception that Plaintiff is disabled, discrimination on the basis of Plaintiff's race, and unlawful retaliation. (Attached as Exhibit A and incorporated herein by reference).

8. On or about November 22, 2017 the EEOC issued to Plaintiff a Notice of Right to Sue Defendant IAFF Local 64. (Attached as Exhibit B and incorporated herein by reference).

9. On or about January 26, 2018 the Department of Justice ("DOJ") issued to Plaintiff a Notice of Right to Sue Defendant KCKFD. (Attached as Exhibit C and incorporated herein by reference).

10. On or about January 26, 2018 the Department of Justice ("DOJ") issued to Plaintiff a Notice of Right to Sue Defendant Unified Government. (Attached as Exhibit D and incorporated herein by reference).

11. The aforesaid Charges of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the EEOC investigation of Plaintiff' claims and the involved parties, which could reasonably be expected to have grown out of the Charge of Discrimination.

12. Through the filing of Plaintiff's Charge of Discrimination, Defendant was afforded notice of Plaintiff's claims and the opportunity to participate in voluntary compliance.

13. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## General Allegations Common to All Counts

14. Plaintiff is African-American.

15. Plaintiff was an employee of Defendant Unified Government and Defendant KCK FD from approximately May of 2004 until approximately September 28, 2016, when his employment was suspended pending termination.

16. A determination regarding Plaintiff's employment has yet to be decided as of the date of this filing.

17. At the time of his suspension, Plaintiff was assigned to Fire Station 10, located at 2210 W 36 Ave Kansas City, Wyandotte County, Kansas.

18. On or about January 21, 2013, Plaintiff suffered an on-the-job injury when he was hit by a car and thrown into the air while on duty, causing Plaintiff to suffer from permanent back injury.

19. Plaintiff's medical condition, at all times pertinent to this Complaint, did and continues to affect his major life activities, including sitting, standing, exercise, sleep and loss of sensitivity in his leg.

20. Plaintiff was put on injury leave immediately following his on-the-job injury.

21. Throughout Plaintiff's injury leave, the Deputy Chief of the Fire Department, Kevin Shirley, personally went to Plaintiff's doctor's office and demanded a copy of his patient file. Kevin Shirley stated, "I am the deputy chief of the fire department and you will give me the records." Kevin Shirley became angry when the doctor refused to him Plaintiff's patient file.

22. Kevin Shirley continuously harassed Plaintiff while he was on leave, asking when Plaintiff would return for light duty.

23. Plaintiff returned to work on or about August 22, 2013.

4

24. Upon returning to work, Plaintiff was informed by the Fire Department's Operations Chief that all his accrued sick days, vacation time, scheduled days off, and comp time had been used while he was off work due to his on-the-job injury.

25. Using sick days for an on-the-job injury was against Plaintiff's Union Policies.

26. Plaintiff immediately brought this to the attention of Fire Department Deputy Chief, Kevin Shirley, and he was told to speak to the Union about it.

27. Plaintiff spoke to Union President and Captain of 14 Fire Station, Bob Wing, in regard to his complaint of being forced to use every accrued sick day, all vacation time, all scheduled days off, and all comp time while off work due to an on-the-job injury. Mr. Wing responded that he "would take care of it"; however, after multiple meetings and multiple complaints, the issue was never corrected.

28. Caucasian employees who were injured on the job were not forced to use any of their sick or vacation time while off work due to an on-the-job injury.

29. On or about January 16, 2015, Plaintiff was notified that he was being moved from his assigned fire station and being assigned to a different shift. These changes caused Plaintiff to lose all of his chosen vacation days for the year and forced him to cancel two planned family vacations.

30. When Plaintiff inquired as to the reason for his transfer, Chief Mike Wilson responded that the location and shift changes came from 'higher up' and that the changes were temporary "to sort some things out".

31. Immediately upon beginning work at Station 10, Plaintiff was subjected to a pattern of repeated harassment by his supervisor, Chief Bob Blevins, Acting Operations Chief. Chief Blevins yelled at, hurled expletives at, and made degrading comments to Plaintiff as well as pounded the table with his fist directly in front of Plaintiff's face.

32. On or about June 9, 2016, Plaintiff reported Chief Blevins' harassment and the hostile environment to Unified Government Human Resource Manager Shakeva Christian.

33. Plaintiff expressed to Ms. Christian that he believed the harassment by Chief Blevins was a result of Plaintiff's injury and his inquiry into the required use of all of his sick time and vacation time during his time off to recover from his injury.

34. A meeting was scheduled for June 10, 2016, to discuss the harassment by Chief Blevins; however, Plaintiff was notified the following day by Ms. Christian that the meeting was cancelled and she would get back to Plaintiff to reschedule the meeting. The meeting was never rescheduled.

35. On or about June 27, 2016, Plaintiff suffered another on-the-job injury of a torn rotator cuff when he had to suddenly put his arms up and deflect a large object from hitting him in the face upon opening a door on one of the fire station vehicles.

36. Plaintiff was off work for recovery of his torn rotator cuff until approximately August 9, 2016.

37. During Plaintiff's injury leave from work, Deputy Chief Zimbelman called Plaintiff's doctor almost daily to find out the status of his injury and to inquire if Plaintiff could return to work on light duty. These daily phone calls continued until Plaintiff's doctor told Chief Zimbelman to stop calling.

38. While Plaintiff was out on injury leave, his family Pastor, Reverend Jimmy Banks, arranged a meeting on behalf of Plaintiff with Douglas Bach, the County Administrator for Defendant Unified Government, because Plaintiff was concerned that his June 9, 2016 complaint was not being taken seriously.

39. Plaintiff had a meeting with Douglas Bach on June 30, 2016, and during this meeting Plaintiff told Douglas Bach about the way he was treated after being injured on the job

and that first in 2013, that his vacation and sick time had been used instead of injury leave and that he was never compensated for this time, that Plaintiff had been moved stations and shifts and that Plaintiff suffered continued harassment from Chief Blevins.

40. Douglas Bach asked Plaintiff if he felt these things were occurring due to Plaintiff's race and Plaintiff stated that he did. Plaintiff stated that he felt that KCKFD was failing to address his complaints and the harassment Plaintiff endured by Chief Blevins because of Plaintiff's race.

41. On or about July 7, 2016, Plaintiff also met with Mark Holland, then the Mayor of Kansas City, Kansas, where he informed the Mayor about the way he was being treated, including being forced to use sick and vacation time instead of injury leave, being moved fire stations and the continued harassment by Chief Blevins. Plaintiff and the Mayor discussed that Plaintiff felt his race was a factor in his treatment, as were the on-the-job injuries Plaintiff suffered.

42. During this meeting with the Mayor, the Mayor indicated to Plaintiff that he was aware of systematic racial issues within the City Government and particularly the KCKFD. The Mayor told Plaintiff that he would look into Plaintiff's complaints immediately and would speak to Renee Ramirez, Director of Human Resources, Doug Bach, and John Paul Jones, the Head Fire Chief of the KCKFD.

43. On or about July 12, 2016, Renee Ramirez called Plaintiff and scheduled a meeting with Ms. Christian, the HR Manager Plaintiff had originally spoken with, and Plaintiff, for July 22, 2016 to discuss Plaintiff's complaints.

44. On July 14, 2016, Plaintiff received a call from Senior Deputy Chief John Peterson who informed Plaintiff that he would be having a meeting with Human Resources the next

day. Plaintiff inquired as to what this meeting was about, John Peterson told Plaintiff that it was between him and Human Resources.

45. Immediately after this phone call, Plaintiff spoke with the Mayor again and the Mayor informed Plaintiff that he had spoken with Renee Ramirez.

46. When Plaintiff arrived for this meeting, Union Manager and Fire Department Captain Chief Bob Wing, Deputy Chief Peterson, Deputy Chief Zimbelman, Renee Ramirez, and Director of Parks and Recreation Jeremy Long were all present. During this meeting Plaintiff was accused of receiving compensation not due to Plaintiff in 2014 for four days that Plaintiff worked at the Parks and Recreation Summer Camp. Bob Wing told Renee Ramirez that this was not a Fire Department issue and she responded that she just thought the Deputy Chiefs would want to hear the accusations.

47. Plaintiff informed everyone present at the meeting, that he had never taken any money or compensation that was not his and that some of the days could have been Plaintiff trading time. Plaintiff asked to see the sign in sheets which would show the actual days Plaintiff worked so Plaintiff could see where the error may have occurred.

48. Renee Ramirez informed Plaintiff that she did not have them and this made Plaintiff concerned and confused about these allegations made against him without support to prove they were true.

49. Plaintiff asked Renee Ramirez if they were going to discuss Plaintiff's complaints of discrimination and harassment, as this is what Plaintiff thought the meeting was being held for, and Ms. Ramirez stated that this conversation was for a later date. This conversation never happened.

50. In or about August 2016, Plaintiff returned to work on light duty because Chief Zimbelman was extremely insistent about Plaintiff's return. At this time, Plaintiff was

8

still suffering from severe pain, limited mobility and range of motion, and difficulty lifting.

51. Plaintiff still suffers from severe pain, limited mobility and range of motion and difficulty lifting today.

52. When Plaintiff returned to work, he was placed in a completely isolated, closed cubicle approximately the size of a closet. Plaintiff continued to be harassed by Chief Blevins, who continually yelled at Plaintiff, pounded his fist on the table directly in front of Plaintiff's face, and constantly walked by Plaintiff while staring at him through a window.

53. The conduct of Chief Blevins was intimidating, hostile and would be offensive to a reasonable person.

54. On or about September 1, 2016, Plaintiff reported to Chief David Shost and Chief John Paul Jones the harassment and hostile environment caused by Chief Blevins.

55. On or about September 28, 2016, Chief John Paul Jones called Plaintiff into his office and informed him that he was being suspended pending termination due to (1) accusations that Plaintiff received compensation not due to him and (2) that it was alleged Plaintiff worked at the Parks & Recreation Summer Camp at a time he had called off work sick. Plaintiff informed Chief Jones that the allegations were not true.

56. Plaintiff filed a grievance regarding the suspension pending termination with his Union Representative; however, a determination as to Plaintiff's employment has yet to be made, over sixteen (16) months later.

57. To this date, Plaintiff is still suspended without pay.

58. Defendant Local 64 has failed to adequately represent Plaintiff or adequately protect Plaintiff from discrimination, harassment and retaliation when he complained about the treatment he was enduring.

59. Defendant Local 64 has failed to adequately represent and protect Plaintiff due to his race as other Caucasian employees and union members with severe disciplinary issues have been better represented by Local 64 and were not suspended for such a long period of time.

60. Any discrepancies that appear in Plaintiff's work record were caused by him engaging in the practice of shift swapping.

61. Shift swapping is a practice commonly engaged in by employees of Defendant KCKFD in which such employees work one another's shift.

62. Defendants are well aware of the practice of shift-swapping.

63. On or about January 4, 2018, Mark Holland, who was then mayor of Defendant Unified Government, called a special meeting of the Unified Government Commission to pass an ordinance to prohibit this shift swapping.

64. This ordinance was vocally opposed by Defendant Local 64 and Defendant KCKFD, and their members and employees.

65. On information and belief, an inadequate number of Commissioners attended the meeting for a quorum to be achieved, so no official business (including the passing of ordinances) could be conducted.

66. On information and belief, no such ordinance has ever passed.

67. On information and belief, the current mayor of Defendant Unified Government, David Alvey, supports the practice of shift swapping, as does at least a majority of the Commissions on the Unified Government Commission.

68. On information and belief, former mayor Mark Holland and Defendant KCKFD have disagreed over the practice of shift swapping since Holland learned about it approximately two years ago; as a result, Defendant KCKFD supported Alvey in the mayoral election.

69. On information and belief, the support of Defendant KCKFD led to Mr. Alvey's victory in the mayoral election over Mr. Holland.

70. On or about January 4, 2018, Administrator Bach and Interim Fire Chief Kevin Shirley issued a statement, which included the following: "Trading time is an accepted, legal practice which is allowed under federal law and the labor contract between the Unified Government and the KCK Firefighters Union."

71. The statement also stated that "This issue is portrayed by some as the Unified Government versus the KCK Fire Department. This is absolutely not true. The KCK Fire Department is an important part of the Unified Government. Firefighters are valued employees who save lives, while frequently risking their own."

72. Despite Defendants' vocal and aggressive support for the practice of shift swapping, up to and including working to remove the chief executive of Defendant Unified Government in order to protect the practice, Defendants would not and did not support Plaintiff when he was singled out for discipline and eventually termination on the basis of shift swapping.

73. The only reason (or reasons) Plaintiff alone is being punished for a practice that is widely supported by Defendants is because of his race, his disability, and/or his opposition to discrimination he has already suffered.

### COUNT I - DISPARATE TREATMENT, HARASSMENT, AND DENIAL OF REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA

74. Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs.

75. Plaintiff is disabled, as defined by the ADA, at all relevant times herein and/or Defendant regarded Plaintiff as being disabled.

76. Specifically, Plaintiff suffers a permanent back condition and lasting debilitation from a tear in his rotator cuff causing him pain and substantially limits his major life activities including: sitting, standing, exercise, sleep, lifting, pulling and loss of sensitivity in his left leg.

77. At all relevant times prior to Plaintiff's suspension, Defendants were aware that Plaintiff had an impairment and a record of having such impairments.

78. Plaintiff is a qualified individual as defined by the ADA, due to his disability and/or Defendants' perception that Plaintiff is disabled.

79. Plaintiff could perform the essential functions of his job duties for Defendant with or without reasonable accommodation.

80. Defendants unlawfully and intentionally discriminated against Plaintiff based upon his disability and/or because they regarded him as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying his legal rights when they suspended Plaintiff's employment.

81. Specifically, Defendants conduct in violation of the ADA included:
    a. forcing Plaintiff to use acquired sick and vacation time when on injury leave in 2013.
    b. transferring Plaintiff to a different station and shift when he complained of discriminatory treatment in regard to his disability.
    c. suspending Plaintiff without pay, for more than fifteen (15) months thus far.

82. Plaintiff's disability and/or Defendants' perception that Plaintiff is disabled, was a motivating factor in Defendants' decision to suspend Plaintiff.

83. Defendants' actions and/or omissions constitute a pattern or practice of discriminatory and retaliatory behavior.

84. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

85. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

86. By failing to take prompt and effective remedial action, Defendants in effect condoned, ratified and/or authorized the harassment of and discrimination against Plaintiff.

87. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other entities from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT II – DISPARATE TREATMENT AND HARASSMENT BASED ON RACE IN VIOLATION OF TITLE VII

88. Plaintiff incorporates the allegations contained in the above-stated paragraphs as if fully set forth herein.

89. During Plaintiff's employment with Defendants, Plaintiff was subjected to different terms and conditions of employment and an ongoing practice and/or pattern of discrimination/disparate treatment and harassment based on his race, African-American, by Defendants.

90. Plaintiff was subjected to different work requirements than other similarly situated Caucasian employees in regard to the terms and conditions of his employment.

91. Plaintiffs race, African-American, was a motivating factor in Defendants' decision to suspend Plaintiff's employment.

92. Defendants' actions and/or omissions constitute a pattern or practice of discriminatory and retaliatory behavior.

93. All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

94. Defendants' actions constitute unlawful employment discrimination against Plaintiff in violation of Title VII, as alleged herein.

95. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

96. The conduct of Defendants was outrageous and evidences an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT III– HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII

97. Plaintiff incorporates the allegations contained in the above-stated paragraphs as though fully set forth herein.

98. During Plaintiff's employment with Defendants, Plaintiff was subjected to a hostile and offensive work environment based upon his race, African-American, by Defendants' employee and Plaintiff's supervisor, Fire Chief Bob Blevins, which constituted a continuing pattern of unwelcome harassment, which Plaintiff found, and which a reasonable person would find, to be offensive, and which altered the terms, conditions and/or privileges of his employment.

99. All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

100. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation,

increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

101. The conduct of Defendants was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and other similarly situated, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IV - RETALIATION IN VIOLATION OF THE ADA

102. Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs.

103. Plaintiff is disabled and/or Defendants regarded him as disabled, as defined by the ADA, at all relevant times herein.

104. Plaintiff is a member of a protected class because of his disability and/or because he was regarded as being disabled and because he requested accommodation.

105. Plaintiff complained of and opposed discriminatory treatment when he requested injury leave when he suffered from on-the-job injuries causing his medical conditions.

106. Plaintiff requested reasonable accommodation from Defendants due to his medical condition.

107. In retaliation to Plaintiff's claims of discrimination and/or request for accommodation in connection with Plaintiff's on-the-job injuries, Plaintiff was suspended.

108. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, including wages and benefit as well as other monetary and non-monetary benefits.

109. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

110. By failing to take prompt and effective remedial action, Defendants, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

111. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other entities from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### **COUNT V - RETALIATION IN VIOLATION OF TITLE VII**

112. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

113. Plaintiff is a member of a protected class because of his race, African-American.

114. Plaintiff engaged in protected activity under Title VII by reporting racial harassment to human resources, informing Defendants of inappropriate and harassing conduct.

115. Plaintiff engaged in protected activity under Title VII by reporting racial harassment to the Mayor of Kansas City, Kansas, informing Defendants of inappropriate and harassing conduct.

116. Defendants took adverse actions against Plaintiff as a result of his engaging in the aforementioned protected activity.

117. For example, after Plaintiff reported the discriminatory treatment he faced, Defendants called Plaintiff into a meeting, placing him on suspension pending termination and never addressed Plaintiff's complaints.

118. Defendants' actions constitute unlawful employment discrimination against Plaintiff and is violation of Title VII. 42 U.S.C.A. § 2000e *et seq.*, as alleged herein.

119. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

120. By failing to take prompt and effective remedial action, Defendants, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

121. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in

an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### **Demand for Jury Trial and Designation of Place of Trial**

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

EDELMAN, LIESEN & MYERS, L.L.P.

/s/Sarah. C. Liesen _____
Sarah C. Liesen         KS #26988
4051 Broadway, Ste 4
Kansas City, Missouri 64110
Telephone: (816) 301-4056
Facsimile: (816) 463-8449
sliesen@elmlawkc.com

ATTORNEY FOR PLAINTIFF