# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JYAN HARRIS, )
)
          **Plaintiff,** )
)
v. )   Case No. 18-2084-JAR-GEB
)
CITY OF KANSAS CITY, KANSAS )
FIRE DEPARTMENT, et al., )
)
          **Defendants.** )
)

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Disqualify Scott Brown and his firm, Blake & Uhlig, P.A., from representing Defendant IAFF Local 64 or any other opposing party in this case. (**ECF No. 17**). On March 6, 2019, the Court conducted a hearing on Plaintiff's motion. Plaintiff Jyan Harris appeared in person and through counsel, Alexander Edelman. Defendants City of Kansas City, Kansas Fire Department and the Unified Government of Wyandotte County/City of Kansas City, Kansas appeared through counsel, Kelli M. Broers. Defendant IAFF Local 64 appeared through counsel, Scott L. Brown. After consideration of Plaintiff's motion and memorandum in support (ECF Nos. 17, 18), Defendants' Memorandum in Opposition (ECF No. 22), Plaintiff's Reply (ECF No. 28), and additional argument from counsel, Plaintiff's Motion to Disqualify was **DENIED** by oral ruling at the conclusion of the hearing. This written opinion memorializes that ruling.

**I. Background[1]**

Plaintiff, an African-American man, worked as a firefighter for the Kansas City, Kansas Fire Department ("KCKFD") and the Unified Government ("UG") from May 2004 until September 28, 2016, when he was suspended pending termination for alleged misconduct regarding his time worked. As part of his employment, he was a member of the IAFF Local 64 labor union ("IAFF"), which has a collective bargaining agreement ("Memorandum of Understanding" or "MOU"[2]) with the KCKFD. After his suspension, on Plaintiff's behalf, the union filed a grievance per the MOU procedure. Months later, as part of this procedure, an arbitration was held, and Plaintiff's termination was upheld by the arbitrator.

After initiating the grievance procedure, but prior to arbitration, Plaintiff filed this federal case against his employers and the IAFF. He asserts claims of discrimination in employment and union representation, and for retaliation under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiff claims his actions regarding his time worked were in full compliance with the regular practices of the department and were pretexts for suspending and terminating him. He alleges he was

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), the Answers of the defendants (ECF Nos. 7, 12, 36) and from the briefing surrounding the motion to disqualify (ECF Nos. 17, 18, 22, 28).

[2] Plaintiff refers to the collective bargaining agreement as a "Memorandum of Understanding." (ECF No. 18.) IAFF refers to the same document as both a "Memorandum of Understanding" and a "Memorandum of Agreement." (*See* ECF No. 22.) For clarity, the Court uses the term "Memorandum of Understanding."

suspended due to his race and because of his disability, or perceived disability, after being injured twice while on duty. He also contends IAFF failed to properly pursue his grievance and represent him during the grievance and arbitration proceedings.

Currently, the litigation is progressing through discovery. Discovery is set to close on April 19, with a pretrial conference set for April 22, 2019, and a jury trial scheduled for January 2020. (ECF No. 53.)

## II.  Relevant Facts[3]

As noted above, Plaintiff was suspended by KCKFD pending termination on September 28, 2016. The next day, IAFF filed a grievance on Plaintiff's behalf to oppose the disciplinary action. At the union's direction, Plaintiff met with IAFF's counsel, Scott Brown, to discuss the grievance and the related process. During the March 6, 2019 hearing, Mr. Brown proffered, and Plaintiff did not dispute, that Mr. Brown never met with Plaintiff alone; rather, a union representative or other individual was always present.[4] Plaintiff claims both Mr. Brown and IAFF representatives told him they would be representing him, but never told him Mr. Brown solely represented IAFF. (ECF No. 18-1, Ex. A, Decl. of Jyan Harris, ¶¶ 10, 23.) But Mr. Brown claims he explained to Plaintiff he was representing IAFF in the grievance matter and, at no time, did he tell Plaintiff he represented him

---

[3] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), the Answers of the defendants (ECF Nos. 7, 12, 36) and from the briefing surrounding the motion to disqualify (ECF Nos. 17, 18, 22, 28).
[4] Recording of motion hearing (March 6, 2019, tape no. 10:32-11:24). The hearing was recorded, but not transcribed. If any party wishes to purchase a written transcription, it may contact the chambers of the undersigned for more information.

personally. (ECF No. 22-7, Ex. G, Decl. of Scott Brown, ¶¶ 6-7.)[5]  Mr. Brown did not present an engagement letter to Plaintiff, or otherwise engage in any written correspondence with Plaintiff, and the IAFF paid Mr. Brown's fees.[6]

As a part of the process outlined in the MOU, the grievance advanced to arbitration after several months.  Plaintiff was unhappy with the lack of progress on the grievance (*see* ECF No. 18-1, Ex. A, at ¶¶ 13-14),[7] although IAFF claims it was actively investigating the merits of the grievance over those months (ECF No. 22, at 3).  Regardless, in the months between the initial grievance and the arbitration, Plaintiff took additional action on his claims.

On July 19, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against all Defendants, including IAFF. (ECF No. 1, Ex. A.)  Mr. Brown responded to the EEOC charge on behalf of IAFF on August 18, 2017. (ECF No. 22-2, Ex. B, Position Statement of IAFF.)  At some time prior to filing his EEOC charge, Plaintiff retained his current counsel at the law firm of Edelman, Liesen & Meyers, LLP, by whom he continues to be represented.  After receiving Notices of Right to Sue, Plaintiff filed this action on February 19, 2018.

Mr. Brown met with Plaintiff prior to the arbitration proceeding, in approximately

---

[5] *See also* Recording of motion hearing (March 6, 2019, tape no. 10:32-11:24); *supra* note 4.  Mr. Brown proffered, "it is my routine, my habit, my practice [as counsel for IAFF] of telling each grievant I meet with, for any of my union clients, that I'm there because the union has asked me to assist them in meeting their duty of fair representation; or in helping them represent the individual.  I always make it clear it is the union who is my client in that way."

[6] *See also* Recording of motion hearing (March 6, 2019, tape no. 10:32-11:24); *supra* note 4.

[7] *See also* Recording of motion hearing (March 6, 2019, tape no. 10:32-11:24); *supra* note 4.

4

January 2018. Plaintiff contends Mr. Brown worked with him to prepare for the arbitration, he shared information and statements from other firefighters with Mr. Brown, and Mr. Brown advised him on the strength of his case. (ECF No. 18-1, Ex. A, ¶ 20.) Plaintiff states he understood Mr. Brown was his attorney. (*Id*.) Again, Mr. Brown claims he explained to Plaintiff that he represented IAFF in the arbitration proceedings. (ECF No. 22-7, Ex. G, ¶ 6.)

On November 13, 2017, Mr. Brown sent a letter to the arbitrator, stating, in part, "I will be representing the Union in this grievance." (ECF No. 22-6, Ex. F.) The arbitration documents clearly list the union, IAFF, as the party pursuing the grievance. (ECF No. 22-5, Ex. E at 1.) Prior to arbitration, Ms. Sarah Liesen, current counsel for Plaintiff, contacted Mr. Brown by email to inquire whether she could attend the arbitration hearing. (ECF No. 22-6, Ex. F, at 2-3.) After discussion with counsel for UG/KCKFD, Ms. Liesen's request was denied, citing the longstanding general practice of the employer to deny requests from grievants to "have their personal legal representatives present at various stages of the grievance procedure." (*Id*. at 3.)

Arbitration was held on March 9, 2018. Following the arbitration, Mr. Brown emailed Ms. Liesen to inquire whether it would be acceptable for IAFF to notify Plaintiff after a decision was rendered. (ECF No. 22-6, Ex. F, at 4.) Ms. Liesen responded, noting "It would be fine for the union to notify Jyan." (*Id*.) The arbitrator issued his decision on May 18, 2018. (ECF No. 18-3, Ex. C.). In a single sentence of the arbitrator's decision, it states, "The Grievant was in attendance and represented by Scott L. Brown, Esq." (ECF No. 18-3, Ex. C, at 1). In a May 18, 2018 email, Mr. Brown suggested to UG's counsel

5

they "provide a copy of the decision to Mr. Harris and his attorney." (ECF No. 22-6, Ex. F, at 5.)

After Plaintiff filed his Complaint in this Court, IAFF filed an Answer and Mr. Brown entered his appearance (ECF No. 12), prompting Plaintiff to seek Mr. Brown's disqualification.

## III. Summary of the Parties' Legal Arguments

Plaintiff asks the Court to disqualify Scott Brown and his firm, Blake & Uhlig, P.A., from representing Defendant IAFF Local 64 pursuant to Kansas Rule of Professional Conduct ("KRPC") 1.9. Plaintiff claims Mr. Brown previously represented him, and his representation of IAFF in this matter creates a conflict of interest which he did not waive. Plaintiff further argues because Mr. Brown must be disqualified, his conflict is imputed to all members of the Blake & Uhlig law firm and, therefore, the entire firm is barred from representing the Defendants pursuant to KRPC 1.10(a). Plaintiff also argues if Mr. Brown was not Plaintiff's attorney during the arbitration, Plaintiff's due process rights were violated because he was not permitted to bring Ms. Liesen to the arbitration hearing.

Defendant IAFF Local 64 contends Mr. Brown never told Plaintiff he was representing him; rather, Mr. Brown was representing Plaintiff only as a union member through Mr. Brown's representation of IAFF. IAFF presents four primary arguments: 1) federal courts have found no attorney-client relationship between union counsel and the union member; 2) under KRPC 1.9(a), plaintiff cannot show an attorney-client relationship existed; 3) the Kansas Public Employer-Employee Act ("PEERA") contradicts Plaintiff's argument an attorney-client relationship exists between union counsel and Plaintiff; and 4)

6

Plaintiff was not deprived of procedural Due Process rights under PEERA.

Defendants KCKFD and UG did not file a written response to the motion, and although their counsel was present during the hearing, they did not take a position on the issue.

IV. **Legal Standards**

The Court has inherent supervisory powers to control the appearance of attorneys before the Court, and motions to disqualify counsel are committed to the Court's sound discretion.[8] The Kansas Rules of Professional Conduct have been adopted by the District of Kansas as the "applicable standards of professional conduct,"[9] and the Court must also look to Kansas case law for guidance in interpreting those rules.[10]

A motion to disqualify must be decided on the unique facts of the case, and the Court is forced to balance competing considerations. These include the privacy of the attorney-client relationship, the prerogative of each party to choose its own counsel, and the hardships that disqualification would impose upon the parties and the entire judicial process.[11] As required by law, the Court approaches the motion and the opposing parties' response with caution, mindful that they can be misused as a litigation tactic or technique

---

[8] *Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins. Corp.*, No. 08–1204–WEB-KMH, 261 F.R.D. 586, 589 (D. Kan. 2009) (citing *Koch v. Koch Industries,* No. 85–1636–SAC, 798 F. Supp. 1525 (D. Kan. 1992)).
[9] D. Kan. Rule 83.6.1(a).
[10] *Seifert vs. Unified Government of Wyandotte County and Kansas City, Kansas, et al.,* No. 11-2327-JTM, 2016 WL 187994, at *1 (D. Kan. Jan. 14, 2016) (citing *Graham by Graham v. Wyeth Labs. Div. of Am. Home Products Corp.*, 906 F.2d 1419, 1423 (10th Cir. 1990)).
[11] *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 1113543, at *5 (D. Kan. Mar. 24, 2011).

of harassment.[12]  "A motion to disqualify counsel deserves serious, conscientious, and conservative treatment."[13]

### A.     KRPC 1.9

The first rule implicated by the current motion is KRPC 1.9, which addresses a lawyer's duty to a former client. The purpose of this rule is to protect former clients.[14] Specifically, KRPC 1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

The party seeking disqualification under KRPC 1.9 bears the burden[15] to demonstrate the existence of three elements: "(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant."[16] If all three factors are present, the attorney must be disqualified.

### B.     KRPC 1.10

KRPC 1.10 deals with the imputation of an attorney's conflict to his or her current

---

[12] *Id.* at *5; *Venters v. Sellers*, 261 P.3d 538, 544 (Kan. 2011) (citing *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 975 P.2d 231 (Kan. 1999)).
[13] *Layne Christensen Co.*, 2011 WL 1113543, at *5 (citing *Koch,* 798 F. Supp. at 1530).
[14] KRPC 1.9 cmt. 9.
[15] *Seifert,* 2016 WL 187994, at *1; *Flint Hills Sci., LLC. v. Davidchack*, No. 00-2334-JAR, 2002 WL 975881, at *6 (D. Kan. Mar. 21, 2002).
[16] *Seifert,* 2016 WL 187994, at *1 (citing *Weeks v. Indep. Sch. Dist. No. I–89 of Okla. County*, 230 F.3d 1201, 1212 (10th Cir. 2000).

law firm. This rule requires,

> (a) while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

"When a motion to disqualify is brought under Rule 1.9(a) and 1.10(a), disqualification is imputed to lawyers practicing together without regard to whether client confidences actually have been shared."[17]

An evidentiary hearing is not required when dealing with a motion under KRPC 1.9(a) and 1.10(a).[18] However, in this instance, the Court felt additional argument may be helpful to further illuminate the details of Plaintiff and Mr. Brown's prior affiliation. Therefore, using its discretion, the Court convened a hearing.

## V. Discussion

### A. KRPC 1.9 Factors

As an initial step, the Court must first apply the three factors cited above to determine whether a KRPC 1.9 conflict exists. The parties agree the second and third factors are present here: the current matter is "substantially related" to the alleged prior representation, and the interests of Mr. Brown's present client are materially adverse to

---

[17] *Flint Hills Sci.*, 2002 WL 975881, at *6 (citing *Monroe v. City of Topeka,* 988 P.2d 228, 232 (Kan. 1999).
[18] *Flint Hills Sci.,* 2002 WL 975881, at *6 (citing *Chrispens v. Coastal Ref. & Mktg., Inc.*, 897 P.2d 104, 115 (Kan. 1995) (noting that the hearing may "result in the disclosure of the very information [KRPC] 1.9 was designed to protect from disclosure"); *see also Layne Christensen Co.*, 2011 WL 1113543, at *6 (citing *Fullmer v. Harper*, 517 F.2d 20, 21 (10th Cir.1975) (for proposition that sometimes an evidentiary hearing is necessary); and *Weeks*, 230 F.3d at 1212 (for the idea that a hearing is not always required).

Plaintiff. Therefore, the focus of the Court's analysis is on the sole remaining factor: whether a previous attorney-client relationship actually existed between Plaintiff and Mr. Brown.

In determining whether an attorney-client relationship existed, it is important to note "an attorney-client relationship need not have a formal contract;"[19] rather, an implied attorney-client relationship is possible.[20] Additionally, the payment of legal fees alone does not determine the formation of such a relationship.[21] "Instead, an attorney-client relationship can be established where the party shows that (1) it submitted confidential information to a lawyer and (2) it did so with the *reasonable belief* that the lawyer was acting as the party's attorney."[22]

Although "reasonable belief" has not been specifically defined, the Tenth Circuit, in the 1994 case of *Cole v. Ruidoso*,[23] found, "Although the alleged former client's subjective belief can be considered by the court, this belief is not sufficient to establish an attorney-client relationship. In addition to having a subjective belief that there was an attorney-client relationship, the belief must have been *reasonable*."[24] In *Cole*, plaintiff was a former principal of the defendant school district and moved to disqualify defendant's

---

[19] *Layne Christensen Co.*, 2011 WL 1113543, at *6.
[20] *See Matter of Hodge*, 307 Kan. 170, 202, 407 P.3d 613, 641 (2017) (citing *Associated Wholesale Grocers, Inc.*, 266 Kan. at 1053).
[21] *Layne Christensen Co.*, 2011 WL 1113543, at *6.
[22] *Id*. (emphasis added).
[23] *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1384 (10th Cir. 1994) (applying New Mexico rules of professional conduct, based upon ABA Model Rule 1.9).
[24] *Id*. (citing *Dalrymple v. National Bank and Trust Co. of Traverse City*, 615 F. Supp. 979 (W.D. Mich. 1985); *Kubin v. Miller*, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992); other internal citations omitted) (emphasis added).

counsel. Cole claimed a prior attorney-client relationship existed between she and the school's current litigation counsel, because "she believed the law firm represented her individually when she consulted with its attorneys on 'sensitive personnel issues' and acted on their advice."[25] The district court reviewed affidavits from both sides, held a hearing, and determined no attorney-client relationship existed. The Tenth Circuit agreed, finding there was no reasonable basis for Cole's belief the firm represented her individually.[26] Similarly, although the Court applied California law, a later unpublished Tenth Circuit opinion in a separate case states, "a would-be client's *unilateral* belief, especially in civil cases, does not create an attorney-client relationship."[27]

### B. Caselaw Regarding Relationships with Union Counsel

Both parties relied on various caselaw to support their arguments; however, neither the parties nor this Court located binding authority directly on point. Some cited cases involved employee union members later suing a union attorney for legal malpractice, which makes the cases distinguishable on the facts and legal situation.[28] Other more factually

---

[25] *Id.*
[26] *Id.*
[27] *Templeton v. Catlin Specialty Ins. Co.*, 612 F. App'x 940, 964 (10th Cir. 2015) (citing *Zenith Ins. Co. v. Cozen O'Connor*, 148 Cal. App. 4th 998 (2007), applying California law) ("a would-be client's unilateral belief, especially in civil cases, does not create an attorney-client relationship.") *See also, e.g.*, *Marshall v. G.E. Marshall, Inc.*, No. 2:09-CV-198, 2010 WL 3219307, at *3 (N.D. Ind. Aug. 12, 2010) (finding, "a would-be client's unilateral belief, especially in civil cases, does not create an attorney-client relationship").
[28] *See, e.g., Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 862-63 (10th Cir. 1996) (*see* discussion, *infra* page 13); *see also, e.g., Peterson v. Kennedy*, 771 F.2d 1244, 1258 (9th Cir. 1985) (finding, "when the union is providing the services, it is the union, rather than the individual business agent or attorney, that represents and is ultimately responsible to the member. We do not believe that an attorney who is handling a labor grievance on behalf of a union as part of the collective bargaining process has entered into an "attorney-client" relationship in the ordinary sense with the particular union member who is asserting the underlying grievance. Although the attorney may well have

similar cases are from other jurisdictions and are therefore only persuasive.[29] What this Court takes from the referenced authorities is this conclusion: courts agree counsel who represent the union during a grievance/arbitration process should not be *automatically* disqualified from later representing the union in litigation. However, this does not mean they can *never* be disqualified. The Court must examine the unique facts of each situation.

---

certain ethical obligations to the grievant, his principal client is the union; it is the union that has retained him, is paying for his services, and is frequently the party to the arbitration proceedings.")

[29] *See, e.g., Griesemer v. Retail Store Employees Union,* 482 F. Supp. 312 (E.D. Pa. 1980). A disqualification case, the court found "[n]o confidential relationship develop[s] between plaintiff and [the union's attorney] under the circumstances," and "[r]epresenting the local union in processing a grievance does not automatically disqualify counsel from representing the union when the dissatisfied grievant sues." *Id*. at 315. Although the analysis is persuasive, the facts in *Griesemer* are distinguishable: plaintiff admitted during testimony at hearing that the union's attorney did not represent her; and he did not ever hold himself out as her attorney. *Id*. at 314.

*See also Adamo v. Hotel, Motel, Bartenders, Cooks and Restaurant Workers' Union*, 655 F. Supp. 1129 (E.D. Mich. 1987). In *Adamo*, much as here, plaintiff moved to disqualify the law firm which handled plaintiff's arbitration on behalf of the union. The court denied the motion to disqualify, finding the union was the party in the arbitration, not the plaintiff. The court found, "the member's rights must be exercised through the union, and it is the union which is the client of the law firm." *Id*. at 1129. *Adamo* cites *Griesemer* to emphasize, if a law firm cannot represent the union, every labor union would have to retain multiple counsel for various types of legal work. *Id*. at 1130. The *Adamo* court found "nothing in this record to suggest any conflict of interest or that any member of the law firm would be required to testify on other than formal matters at trial." *Id*.

*See also Conn v. United States Steel*, No. 207-CV-00213-JVB-PRC, 2009 WL 260955 at *1 (N.D. Ind. Feb. 2, 2009). In *Conn*, plaintiff sought to disqualify the labor union attorney who represented the union during the grievance process from representing the union in the federal litigation. But in *Conn*, the focus was on confidential information provided the attorney under Indiana ethics rule 1.18 and the attorney as a material witness under ethics rule 3.7. *Id.* at *4-7. And, plaintiff did not claim she was ever a client of union counsel's, or believed he represented her interests. Rather, she was more concerned about the confidential information she provided to him as part of their conversations. The court found the facts identified during their meeting eventually appeared in the public records, so the information was not confidential, and counsel was not disqualified. *Id*. at *6. But the court in *Conn* cited *Griesemer* and *Adamo* to register its concern whether a decision to disqualify a union attorney from later representing the union in litigation "would require every labor union to retain several law firms to handle specific areas of potential litigation or proceedings in which the union may become embroiled." *Id*. at n.2.

*See also Greene v. Indep. Pilots Ass'n,* No. 3:14-CV-00628-TBR, 2016 WL 6877745, at *1 (W.D. Ky. Nov. 21, 2016) (*see* discussion, *infra* pages 13-14).

One Tenth Circuit case, originating in the District of Kansas, is particularly instructive. In *Arnold v. Air Midwest, Inc.*,[30] the plaintiff pilot brought claims against the union, as well as breach of fiduciary duty and malpractice claims against the union's attorney. In the initial orders in the District of Kansas, Judge Lungstrum granted defendants' motion to dismiss and summary judgment motions.[31] The Tenth Circuit then upheld both decisions, finding "the immunity for union agents . . . extends to lawyers, and . . . an attorney who performs services for and on behalf of a union may not be held liable in malpractice to individual grievants where the services performed constitute a part of the collective bargaining process."[32] The Tenth Circuit found the pilot's "attempt to recharacterize [attorney's] relationship to the union is not persuasive. [Counsel] was retained by the union, not by [the employee]. [The attorney's] services were provided to [employee] as a benefit of [employee's] union membership."[33]

Also persuasive is a more recent case from the Western District of Kentucky. In *Greene v. Indep. Pilots Ass'n*,[34] the court was faced with a similar disqualification issue, which also boiled down to whether an attorney-client relationship existed between the union attorney and the employee.[35] The court analyzed the issue using the Kentucky rules

---

[30] 100 F.3d 857, 862-63 (10th Cir. 1996).
[31] *See Arnold v. Air Midwest, Inc.*, No. 93-2426-JWL, 1994 WL 247442, at *7 (D. Kan. May 24, 1994), *aff'd*, 100 F.3d 857 (10th Cir. 1996) (finding "the state law breach of fiduciary duty and malpractice claims against [union counsel] are also barred for the additional reason that state law claims against individuals acting as union representatives within the ambit of the collective bargaining agreement are foreclosed; *see also Arnold v. Air Midwest, Inc.*, No. 93–2426–JWL, 877 F. Supp. 1452, 1456 (D. Kan. 1995), *aff'd*, 100 F.3d 857 (10th Cir. 1996).
[32] *Arnold*, 100 F.3d at 862.
[33] *Id*. at 862-63.
[34] *Greene*, 2016 WL 6877745, at *1.
[35] *Id*. at *4.

of professional conduct nearly identical to KRPC 1.9 and 1.10.[36] The court found counsel held himself out as counsel for the union. The court discussed an email from counsel, identifying himself as "counsel for [the union]", as well as a letter from the union to Greene, and discussed the briefing submitted before the termination hearing where the attorney filed briefs on behalf of the union, not Greene.[37] The court noted, "granted, a layperson may very well believe that when a union says, 'our attorney will represent you,' the union's attorney is also his attorney."[38] But the court found Greene "could not have reasonably believed that was the case, because he employed his own personal counsel."[39]

## C. Other Arguments

Although the ethics rules and related caselaw provide ultimate guidance, a brief mention of the parties' other arguments is prudent. Defendant IAFF cites the Kansas Public Employer-Employee Act ("PEERA"), K.S.A. §§ 75-4321 et seq., to support its position. IAFF contends the laws contradict Plaintiff's argument that an attorney-client relationship could exist between a union attorney and a union member because the statutes give unions the exclusive right to represent their members in the grievance and arbitration process. However, nothing in the PEERA statutes or the portions of the Memorandum of Understanding produced by the parties mention the representation of the union or the union members by counsel. Because PEERA does not address the formation of the attorney-client relationship, the Court finds the argument unpersuasive.

---

[36] *Id*. at *2-*3 (citing, in part, Kentucky Supreme Court Rules 3.130(1.9) and 3.130(1.10)).
[37] *Id*. at *4.
[38] *Id*.
[39] *Id*.

14

Equally unconvincing to this Court is Plaintiff's Due Process argument. In sum, Plaintiff contends if Mr. Brown represented Plaintiff personally during the arbitration hearing, his constitutional right to procedural Due Process was upheld. If the Court finds Mr. Brown was not Plaintiff's personal representative, then his right to have counsel present was violated. Defendant responds that nothing in the MOU allows Plaintiff to have an attorney present; in fact, counsel are routinely not permitted during arbitration, and it is the union's decision how to conduct the arbitration, pursuant to the MOU.

But Plaintiff confuses his right to Due Process with his right to counsel. Plaintiff cites a 1991 Tenth Circuit case, *Melton v. City of Oklahoma City*,[40] to argue courts have recognized a deprivation of the right of continued employment requires a hearing at which the employee is represented by an attorney. However, Plaintiff cites the dissent in *Melton*, and the Court did not definitively find attorney representation necessary prior to termination.[41] Defendant cites to both Kansas state caselaw and District of Kansas federal caselaw to show both courts have held, if the MOU between the parties provides for termination of employees only for "just cause" and the MOU contains a detailed grievance procedure, Due Process is protected. None of the authority cited by the parties, or the MOU itself, require presence of counsel.

Here, the Court finds both the PEERA issue and the Due Process analysis frankly extraneous to its consideration of whether an attorney-client relationship was formed. Whether or not the process outlined in the MOU and enforced by the IAFF and the

---

[40] 928 F.2d 920, 939 (10th Cir. 1991).
[41] *Id*.

employer preserved Plaintiff's right to Due Process is outside the scope of this Court's analysis. Even if Plaintiff's Due Process rights *had* been violated—a topic which this Court does not address on its merits—neither PEERA or the parties' Due Process arguments directly bear on the ultimate issue of whether an attorney-client relationship was created. For this analysis, the Court must look to the ethical rules and related caselaw discussed above.

### D. Factual Analysis

Based upon the KRPC 1.9 analysis, the only element at issue is whether a prior attorney-client relationship existed between Plaintiff and Scott Brown. There are no binding District of Kansas or Tenth Circuit cases fully on-point. And, Plaintiff is correct: many of the cases cited by Defendant say "*by itself*, an attorney's advocacy on behalf of an employee in a labor [union] cannot create an attorney-client relationship. [But] the cases do not say that such a relationship can *never* exist." (Reply, ECF No. 28, at 7.) However, upon review of the facts, the Court finds no such relationship existed here.

If the only evidence presented were the competing affidavits of Plaintiff and Mr. Brown, giving us a "he said vs. he said" situation, the Court would resolve any doubts in favor of disqualification.[42] But this is not the situation this Court encounters. The totality of the evidence, viewed in conjunction with the caselaw, weighs against formation of an attorney-client relationship. Written documents identify Mr. Brown as "attorney for the union." Plaintiff admits IAFF paid Mr. Brown for his services. Mr. Brown and Plaintiff

---

[42] S*eifert*, 2016 WL 187994, at *1; *United States v. Wittig*, No. 03-40142-01-JAR, 2005 WL 7139151, at *3 (D. Kan. May 6, 2005). *See also Koch*, 798 F. Supp. at 1530.

never met alone. Although it is true none of these things *alone* mean no relationship existed, the Court must examine them in the aggregate.

In addition to these facts, Plaintiff retained Ms. Liesen as counsel prior to the arbitration hearing. The emails between Ms. Liesen and Mr. Brown prior to arbitration make clear *she* is Mr. Brown's personal representative—not Mr. Brown. Ms. Liesen asked to attend the arbitration on Plaintiff's behalf. After the arbitration, Mr. Brown asked Ms. Liesen for permission to contact her client. And, even without hiring personal counsel, by August 2017, after IAFF responded to Plaintiff's EEOC charge and nearly seven months prior to the arbitration, it was clear Mr. Brown was representing IAFF in the EEOC matter in a position clearly adverse to Plaintiff. (*See* IAFF's Position Statement, ECF No. 22-2, Ex. B.) The only evidence[43] before the Court to suggest an attorney-client relationship existed is the subjective belief of Plaintiff—his assertion Mr. Brown told Plaintiff he was his attorney. But, as has been held in prior cases, a subjective belief is not enough.[44]

Also weighing against disqualification is Plaintiff's failure to identify any prejudice he faces by permitting Mr. Brown to continue his representation of IAFF in this case. Plaintiff does not describe how Mr. Brown's continued representation gives IAFF a material advantage in this lawsuit, or how the information he gave Mr. Brown (for use

---

[43] Plaintiff also contends the arbitration order identifies Mr. Brown as his counsel. Although the order does identify Mr. Brown as counsel for the Grievant in its opening paragraph, the same order also clearly names the parties to the arbitration as "Unified Government of Wyandotte County - Kansas City, Kansas Fire Department and International Association of Fire Fighters Local No. 64"—not Plaintiff personally. (*See* ECF no. 18-3, Ex. C.) Therefore, the references in the arbitrator's order neither help nor hinder this analysis.

[44] *See Cole*, 43 F.3d at 1384; *Layne Christensen Co.*, 2011 WL 1113543, at *6.

against the employer, not against IAFF) would not have otherwise been utilized in this litigation. Without any description of prejudice, it seems the "playing field is not so tilted as to deny" Plaintiff a fair trial.[45] The Court would be remiss to ignore the prerogative of IAFF to choose its legal counsel, and the hardships that disqualification would certainly impose upon all parties—including Plaintiff—and the entire judicial process.[46]

The Tenth Circuit's analysis in *Arnold*[47] of the relationship between the union's attorney and the employee is compelling. As in *Arnold*, here Plaintiff's attempt to recharacterize Mr. Brown's relationship to the union is not persuasive. Mr. Brown was secured and employed as a representative of the union, not by Plaintiff personally. Mr. Brown's services were provided to Plaintiff as a benefit of Plaintiff's union membership. After the analysis of all evidence before the Court, although Plaintiff, as a layperson, may believe Mr. Brown, acting as the union attorney, also represented him personally, the Court finds Plaintiff could not have *reasonably* believed that was the case.[48] Because this Court finds no attorney-client relationship existed, no conflict of interest exists under KRPC 1.9 and disqualification is not warranted.

Because disqualification of Scott Brown is not required under KRPC 1.9, disqualification of his law firm, Blake & Uhlig, P.A., under KRPC 1.10(a) must also be denied.

---

[45] *Prof'l Serv. Indus., Inc. v. Kimbrell*, 758 F. Supp. 676, 684 (D. Kan. 1991).
[46] *Layne Christensen Co.*, 2011 WL 1113543, at *5 (citing *Nat'l Bank of Andover, N.A. v. Aero Standard Tooling, Inc.,* 49 P.3d 547, 533 (Kan. App. 2002)).
[47] *Arnold*, 100 F.3d at 862-63.
[48] *Greene*, 2016 WL 6877745, at *1.

## VI. Conclusion

Applying the test necessary to determine whether a KRPC 1.9 conflict exists, the Court finds Plaintiff has not met his burden to prove all three elements are present. Specifically, the Court finds no attorney-client relationship existed, and Mr. Brown is not disqualified from representing Defendants in this matter. As a result, the law firm of Blake & Uhlig, P.A., is not disqualified under KRPC 1.10.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Disqualify Scott Brown and his firm, Blake & Uhlig, P.A. (**ECF No. 17**) is hereby **DENIED** as set forth above.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 26th day of March, 2019.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
United States Magistrate Judge
