## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JYAN HARRIS,**

       **Plaintiff,**

       **v.**
                                    **Case No. 18-CV-02084-JAR**

**CITY OF KANSAS CITY, KANSAS FIRE
DEPARTMENT, et al.,**

       **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff Jyan Harris brings this employment discrimination action against his former employer, the Unified Government of Wyandotte County/Kansas City, Kansas ("UG").  Before the Court is Plaintiff's Motion for Spoliation Sanctions (Doc. 142).  The motion is fully briefed and the Court is prepared to rule.  As described more fully below, the Court denies Plaintiff's motion.

**I.      Background**

On September 28, 2016, Plaintiff was suspended pending termination by the UG from his job as a firefighter after an internal investigation determined that he was double dipping, or being paid for working on certain dates and times for both the Fire Department and the Parks and Recreation Department, during the summers of 2013, 2014, and 2015.  Defendant also alleges that during these years, Plaintiff worked at Parks and Recreation on certain dates for which he took paid sick leave from the Fire Department.

Plaintiff contends that Defendant's allegations of double dipping are mere pretext for race discrimination or retaliation, and that he did not commit any misconduct because he was engaged

in time trading.  Time trading is a practice within the Fire Department where two employees work the other's shift, but each employee remains on the clock for their original shift.

Plaintiff worked as an instructor in 2013 and 2014 for the Parks and Recreation Department's summer program.  In 2015, he worked as a lead instructor at the program's Eisenhower Community Center ("Eisenhower") location.  The Parks and Recreation Department used "sign-in sheets" on which its employees would sign in and sign out, documenting their hours worked.  Information from these sign-in sheets (including specific times worked each day) was copied by the lead instructor onto "time sheets" that each employee would then sign to verify their hours worked.  Plaintiff's sign-in sheets from 2013, 2014, and 2015 have been destroyed or discarded.

Shelly Burnett was the Parks and Recreation Coordinator.  In 2015, as the lead instructor at the Eisenhower location, Plaintiff was responsible for processing time sheets for the other employees, which involved writing down what time they arrived and left and getting their signatures.  Burnett picked up the time sheets from Plaintiff every Wednesday.  In contrast, the sign-in sheets were left at the respective community centers and bundled together at the end of each summer with other documents such as the registration forms.

Pam Smith was a lead instructor at the Argentine Facility for the summer program and Youth Summer Activities Coordinator.  Burnett described Smith has her "right hand."  During the investigation into discrepancies between Plaintiff's Fire Department and Parks and Recreation Department hours, Renee Ramirez, the Director of Human Resources ("HR"), asked Burnett to produce Plaintiff's "time records" for the summer program.[1]  At her deposition, Burnett recalled receiving the 2013 and 2014 sign-in sheets from Smith and turning them over to

---

[1] Doc. 144-3.

HR, but later clarified in her affidavit that she produced time sheets for those years to HR, not sign-in sheets.

The record shows that Burnett sent Ramirez time sheets by email on January 28, 2016. Burnett states in her affidavit that she could not find the sign-in sheets for Plaintiff in January and February 2016. This statement is supported in part by an email she sent to Ramirez on February 1, 2016:

> The time sheets I sent you on Thursday are the ones I have. At Eisenhower Community Center, Jyan Harris was the recreation leader. He filled the timesheets out for the workers at Eisenhower, and I collected them from him and processes [sic] them. I went to Eisenhower and looked for the time in and out sheets, but they were not there. Ms. Pam Smith did speak with Mr. Harris about the sheets, and he claims to have thrown them away.[2]

This email clearly references the sign-in sheets for 2015, the only year that Plaintiff was a lead instructor. It is corroborated by Burnett's deposition testimony that Smith told her Plaintiff had thrown away the sign-in sheets for the 2015 summer because he did not think that the Parks and Recreation Department filed them. Burnett sent the time sheets for 2014 to Ramirez by email on February 19, 2016, after Ramirez requested them.

Smith maintained past years' sign-in sheets at the Argentine facility. In 2016, the UG started renovating the Argentine facility. The renovations decreased storage space available to the summer program, so many old documents were disposed of. Burnett testified that she believed the remaining sign-in sheets were shredded by Smith when Smith retired in 2018.

---

[2] Doc. 144-2.

But Smith states in her affidavit that to her knowledge, "any sign-in sheets at the Argentine facility would have been disposed of during that downsizing in 2016," and she denies shredding any sign-in sheets when she retired.[3]

Plaintiff filed his Charge of Discrimination against Defendant on July 19, 2017.  On February 19, 2018, Plaintiff filed his Complaint.  On November 24, 2018, Plaintiff served Defendant with Plaintiff's First Request for Production of Documents, which included a request for "all documents related to the suspension or termination of Plaintiff and/or any investigations by Defendant related to Plaintiff's suspension or termination, including emails and internal documents."[4]

## II.      Discussion

Plaintiff seeks spoliation sanctions against the UG based on the destruction of the 2013 and 2014 sign-in sheets, including an adverse inference instruction.  Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[5]  "Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'"[6]  There must be a showing of actual, not theoretical, prejudice.[7]  The moving party bears the burden to demonstrate spoliation by a preponderance of the evidence.[8]  "[I]f the

---

[3] Doc. 144-6 ¶¶ 9–10.

[4] Doc. 142-2, Request No. 13.

[5] *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

[6] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).

[7] *Id.* at 1150.

[8] *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 2370110, at *1 (D. Kan. June 21, 2012).

aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith."[9]  "Bad faith involves dishonest conduct and implies wrongdoing or some motive of self interest. . . .  However, mere negligence in losing or destroying records is not enough because 'it does not support an inference of consciousness of a weak case.'"[10]  "Without a showing of bad faith, a district court may only impose lesser sanctions."[11]

### A.    Destruction Despite Duty to Preserve

Plaintiff does not establish by a preponderance of evidence that the 2013 and 2014 sign-in sheets were destroyed by the UG when it was under a duty to preserve the documents.  The only evidence that supports Plaintiff's contention that the sign-in sheets were shredded in 2018 is Burnett's deposition testimony that she believed Smith shredded them at the time of her retirement.  But she did not testify that she witnessed Smith shred these documents, and Smith attests that while she shredded some summer program documents when she retired, sign-in sheets were not included in the documents she shredded.

Moreover, the testimony cited by Plaintiff does not demonstrate that Burnett produced to Ramirez during the investigation sign-in sheets versus time sheets that she collected for payroll. It is not surprising that witnesses would be confused about which documents were being discussed.  The evidence suggests it is more likely than not that the time sheets were the documents turned over to HR during the investigation because Ramirez asked Burnett for the sign-in sheets by email, at least for 2015, and Burnett responded that she could not locate them. Smith and Burnett testified that Plaintiff discarded the 2015 sign-in sheets, but not those for 2013

---

[9] *Turner*, 563 F.3d at 1149.

[10] *FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 WL 2084147, at *6 (D. Kan. May 24, 2011) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).

[11] *Turner*, 563 F.3d at 1149.

and 2014.  Plaintiff's 2015 time sheets were attached to Ramirez's April 21, 2016 report.  Smith explains in her affidavit that due to space issues, many documents—most likely including Plaintiff's 2013 and 2014 sign-in sheets—were removed and destroyed in 2016, well before Plaintiff's charge was filed.  Again, while there is evidence that the 2014 time sheets were sent by email to Ramirez, there is no evidence that Burnett or Smith ever produced the sign-in sheets, aside from Burnett's testimony that she later clarified.  In sum, Plaintiff has failed to meet his burden of showing that it is more likely than not these documents were shredded by Smith in 2018, after the UG was on notice of Plaintiff's claims.

### B.      Prejudice

Even if Plaintiff is able to show destruction in the face of a duty to preserve, he fails to demonstrate by a preponderance of the evidence that he suffered actual, as opposed to theoretical, prejudice.  Plaintiff asserts that the sign-in sheets would support his contention that he was present at the Parks and Recreation Department on the dates he was accused of double dipping, which in turn supports his contention that he was time trading at the Fire Department, rather than double dipping.  But there are several problems with this contention.  First, Plaintiff had access to other evidence to demonstrate he was time trading on those dates; namely, the timesheets that the UG did produce.  Moreover, Plaintiff offers evidence in the form of his own testimony and a time trading audit report to show that the UG should have been aware of the need to investigate whether Plaintiff was time trading on those dates because the records were not always accurate.  He testified in his deposition that he was time trading on those dates as well.  As discussed in the summary judgment order, there is other evidence in the record to support Plaintiff's claim of pretext.

Second, Plaintiff inexplicably only challenges the missing sign-in sheets for 2013 and 2014. Yet, the record supports Defendant's assertion that Plaintiff himself discarded the 2015 sign-in sheets. Joe Connor, the Assistant County Administrator, testified that his termination recommendation was primarily based on the dates Plaintiff double dipped in 2015. Therefore, Plaintiff does not explain how the missing 2013 and 2014 sign-in sheets prejudice him, but the missing 2015 sign-in sheets that he himself discarded do not.

C.     **Bad Faith**

Plaintiff claims that the evidence was destroyed in bad faith based on Burnett's deposition testimony that she produced the sign-in sheets to HR during the double dipping investigation and that Smith shredded the sign-in sheets despite the UG long knowing of their relevance, suggesting HR removed the documents from the investigative file in order to avoid production. As described above, Plaintiff fails to establish these facts by a preponderance of the evidence in light of Burnett's and Smith's affidavits clarifying the differences between the sign-in sheets and time sheets, and the emails that show time sheets, but not sign-in sheets, were produced to HR during the investigation. The only witness with personal knowledge about what documents were shredded in 2018 attests that she did not shred the sign-in sheets. Instead, Smith's affidavit establishes the likelihood that these documents were discarded in 2016 during the Argentine renovation, well before Plaintiff's charge of discrimination in 2017.

For all of these reasons, Plaintiff has failed to demonstrate that spoliation sanctions are warranted in this case based on the missing sign-in sheets from 2013 and 2014.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Spoliation Sanctions (Doc. 142) is **denied**.

**IT IS SO ORDERED.**

Dated: March 2, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
